# Miles Land Co., Appellant, *v.* Hudson Coal Company.

*Land law—Real property—Boundaries—Location—Province of court and jury—Deeds—Surveys — Construction — Landmarks — Obliteration — Evidence — Courses and distances — Streams as boundaries—Ejectment.*

1. What are boundaries is a matter of law for the court, to be determined by the construction of the deed or survey; where the boundaries are is a question of fact for the jury.

2. It is a principle of construction that where land is described by courses and distances and also by established landmarks, the landmarks form the true boundary and the courses and distances serve but to point towards the place.

3. Where a survey is made by an independent, separate member of an established block, such survey is to be located by its own marks and monuments, aided if necessary by legal presumption.

4. If some only of the original marks and monuments can be found, it is competent to show that others answering to the calls did at one time exist, and those not supplied by the testimony will be accounted for by legal presumption. It is only in the absence of such marks upon the ground and the total failure of evidence to supply them, that recourse can be had to the lines and calls of the block, or the lines and calls of any junior member of that block or any other.

5. A survey returned as bounded by a navigable river, vests in the owner the right of soil to the ordinary low water mark of the stream, subject to certain rights of the public in the stream between ordinary high and ordinary low water mark.

6. Where in an action of ejectment plaintiff claimed title to the land between the Lackawanna river and certain lots admittedly the property of defendant under patents from the Commonwealth, and designated as "Pine lots 3, 4, 5 and 6," but where defendant contended that the surveys of these Pine lots called for the Lackawanna river as a boundary of such lots, and that the land claimed by plaintiff was included in the Pine lots, it appeared that the warrant and draft to the return or survey of Pine lot No. 3, described it as "adjoining Pine lot No. 4, Lot No. 36, first division on the southwest, Pine Lot No. 2 on the northwest, and Lackawanna river on the north," that the patent from the Commonwealth described the lot as "Beginning at a corner in line of Lot No. 36, first division......East 36.1 perches to a corner near Lackawanna river,

thence up said river south seventy-six degrees east to another corner near said river." The draft of Pine Lots 4 and 5 gave as adjoiners "No. 3," "No. 36, first division," "No. 6," and "Down Lackawanna." The draft of Pine lot No. 6 gave as adjoinders "No. 5," "No. 36, first division," "No. 7," and "Up Lackawanna." The patent for lots Nos. 4, 5, 6, and 7 described the lots as "Beginning at a corner......thence up Lackawanna river south seventy-nine and one-half degrees." The jury rendered a verdict for the plaintiff. *Held,* the court did not err in entering judgment for defendant n. o. v., on the ground that the drafts and patents showed that the Lackawanna river was the western boundary of the Pine lots.

Argued Feb. 24, 1914. Appeal, No. 335, Jan. T., 1913, by plaintiff, from judgment of C. P. Lackawanna Co., June T., 1910, No. 438, for defendant non obstante veredicto, in case of Miles Land Company v. Hudson Coal Company. Before FELL, C. J., BROWN, MESTREZAT, ELKIN and MOSCHZISKER, JJ. Affirmed.

Ejectment for land in Moosic Borough.

The facts appear in the following opinion of JOHNSON, P. J., specially presiding, sur defendant's motion for a new trial and for judgment n. o. v.:

This is an action of ejectment brought to recover one acre and twenty-four perches of land situate in the Borough of Moosic, in Lackawanna County, on which are located a coal shaft, engine house, and boiler house. The case came on for trial, was submitted to the jury and a verdict was rendered for the plaintiff. The defendant is now asking for judgment non obstante veredicto and, if this is refused, for a new trial.

The land in dispute lies on the southeasterly side of the Lackawanna river and is claimed by the plaintiff to be included in the two grants of adjoining tracts of land from the Commonwealth of Pennsylvania to Harmon A. Chambers, covering the Lackawanna river and bounded on the east by the Pine lots, senior surveys. The plaintiff contends that the western boundary of the Pine lots is some distance east of the Lackawanna river and that

the land in dispute is located between the western boundary of the Pine lots and the eastern shore of the Lackawanna river and therefore lies within the grants to Harmon A. Chambers whose title has by different conveyances become vested in the plaintiff. The defendant, owner of the Pine lots adjoining plaintiff's land on the east, contends that the western boundary of the Pine lots is the Lackawanna river, that there is no space between them and the river, that the land in dispute is contained within the Pine lots and therefore belongs to the defendant. The sole issue in this case therefore is to determine whether or not the Lackawanna river is the western boundary of Pine lots Nos. 3, 4, 5, and 6 which, if they run to the river, include the land in dispute. If the Lackawanna river is the western boundary of these lots, the plaintiff has no title to the land in question. If it is not, the defendant has no title.

The defendant claims that in the surveys of the Pine lots the Lackawanna river is called for as their western boundary. The plaintiff disputes this and contends that the Pine lots must be located on the ground by the courses and distances given in the surveys which places this western boundary some distance east of the river. The western line of the Pine lots as contended for by the plaintiff, is not marked upon the ground by any natural or artificial monuments. Before attempting to determine the western boundary of the Pine lots it is necessary to have in mind the rule of law which governs in the location of land. It is stated in 4 Am. & Eng. Enc. of Law, 2 Ed., page 764, as follows: "Natural monuments are objects permanent in character which are found upon the land as they were placed by nature, such as streams, lakes, and ponds, shores and beaches, also highways and streets, walls, fences, trees, hedges, springs and rocks, and the like.

"All lands are supposed to be actually surveyed, and the presumed intention of the grant is to convey the land according to such actual survey. Consequently, wher-

ever natural monuments, referred to in the description of a deed as marking the boundary, can be found, they fix the limits of the premises granted, though they correspond neither with the courses and distances, nor with the quantity of the land given in the same descriptions." The same principle is laid down in 5 Cyc. 918: "In the absence of marked and established boundaries, natural objects called for as the boundary of a survey, being more certain and permanent, control calls for courses and distances; but this rule will not be enforced when either the instrument itself or the clearly expressed intention of the parties would be thereby defeated, or when the rejection of a call or calls for natural objects would reconcile other parts of the description and leave enough to identify the land." In Leading Cases in the American Law of Real Property, Sharswood and Budd's Edition, Vol. 4, page 357, we have the following statement of the rule: "The first rule is that, where there is a conflict between monuments, whether natural or artificial, and the courses and distances named in a deed, the former must control and the distances must be contracted or extended and the courses deflected so as to accord with the monument."

The rule as above stated by the text writers is clearly held to be the law of Pennsylvania by Chief Justice GIBSON in Cox v. Couch, 8 Pa. 147, on page 154, where he says: "It is a principle of construction, that where land is described by courses and distances, and also by calls for adjoiners, the latter, where there is a discrepancy, invariably govern; and it is as applicable to conveyances as it is to official surveys. By reason of imperfection of instruments, as well as inequalities of surface and carelessness of assistants, extreme accuracy is not to be attained by the compass and chain; while, on the other hand, calls for natural objects, or, what is much the same, known and established lines of contiguous tracts, admit of perfect certainty. When a vendor, therefore, conveys by established landmarks, the subject of the

grant will neither overrun nor fall short of them. They form the true boundary, and the courses and distances serve but to point towards the place."

Pine lots 3, 4, 5, and 6 were surveyed independently of the block of the Pine lots and therefore, if possible, we must locate the western boundary of these Pine lots by their own monuments or calls as indicated in the surveys before resorting to extrinsic evidence. We are supported in this view by the opinion of Mr. Justice STEW-ART in Collins v. Clough, 222 Pa. 472, where, on page 481, he says: "With the question of priority of location settled, it would yet remain with the plaintiffs to show that the original location of the warrants under which they claim, embraces the disputed territory. The law indicates in no uncertain way the kind of evidence required for the purpose, and makes clear distinction between what is best and what but secondary. Involved in the very idea of priority is that of separate individual location. We are then dealing here with a survey actually made of an independent, separate member of an estab-lished block. Such a survey is to be located by the work of the surveyor found upon the ground, if it can be traced; in other words, by its own marks and monu-ments, aided, if need be, by the legal presumptions: Ferguson v. Bloom, 144 Pa. 549. Where admitted marks and monuments are found answering to the calls of the survey they establish conclusively the location. As has been said, these are the official footsteps of the deputy surveyor, and are therefore the highest and best·evidence of the true location. If some only of these original marks·and·monuments can be found, it is entirely com-petent to show that others answering to the calls did at one time exist, and where. If the testimony fails to supply them all, the legal presumption will supply those unaccounted for. It is only in the absence of such marks upon the ground, and the total failure of the evidence to supply them, that recourse can be had to the lines and calls of the block, or the lines and calls of any

junior member of that block or any other. Both these methods cannot be resorted to at the same time: Ferguson v. Bloom, 144 Pa. 549; Grier v. Penna. Coal Company, 128 Pa. 79."

In determining whether the Lackawanna river is the western boundary of Pine lots numbers 3, 4, 5 and 6 we shall consider separately the survey of each lot. In the draft of the survey of Pine lot No. 3 made by Henry Colt June 23, 1831, we find the following adjoiners given: "No. 2," "Down Lackawanna," with the flow lines of the river indicated "No. 4" and "No. 36," Lots "No. 2," "No. 36" and "No. 4" are adjoiners. "Down Lackawanna," with the flow lines of the river, stands in the same relation to Lot No. 3 as "No. 2," "No. 36," and "No. 4." This survey was evidently abandoned and on June 1, 1869, Harmon A. Chambers applied for a warrant and survey for Pine Lot No. 3 in which he described the same as follows: "Adjoining Pine Lot No. 4, Lot No. 36, First Division, on the southwest, Pine Lot No. 2 on the northwest and Lackawanna river on the north." The warrant and draft together with the description of the draft give the same adjoiners.

The patent to Harmon A. Chambers dated August 3, 1870, contains the following description: "Beginning at a corner in line of Lot No. 36, First Division, thence along said line forty-nine and one-half degrees west seven perches to another corner in said line, thence by Pine Lot No. 2 north forty-three and one-half degrees east thirty-six and one-tenth perches to a corner near Lackawanna river, then up said river south seventy-six degrees east eight perches to another corner near said river; thence by said Pine Lot No. 4 south forty-three and one-half degrees west forty and two-tenths perches to the beginning, containing one acre and one hundred and seven perches strict measure."

The Lackawanna river is clearly a call and the western boundary of Pine Lot No. 3 runs to low water mark and therefore there is no vacant space between it and

the Lackawanna river.   In this conclusion we are supported by our Pennsylvania decisions.   In Klingensmith v. Ground, 5 Watts 458, the court say:  "A corner tree is not always to be had where it is wanted, and where that is the case, it is the practice to mark the next convenient one, leaving the exact point of intersection to be determined by an extension of the lines, as marked on the ground.   Where a running stream is called for, it is always understood that the ownership extends to low water mark, and so far has this been held in Pennsylvania, that a traverse line has been held, technically to pursue the meanders, so as to include the points that would otherwise be thrown out by it.   Though the words 'near the creek,' strictly speaking, imply the existence of space betwixt the object immediately expressed, and the object of reference beyond it, they indicate, in popular meaning, no more than the whereabout.   Such is the general rule and what is there to take the case out of it?  If the words 'thence up the creek north,' do not call for the creek as a boundary, why was the creek mentioned at all?   The argument on the other side is, that the course being also given, no more is necessary to close the survey.   But if the course were sufficient to express the whole intent, we are unable to conjecture why a natural object should have been employed."   In Younkin v. Cowan, 34 Pa. 198, on page 200, WOODWARD, Judge, delivering the opinion of the court lays down the following rule: "That lines actually marked on the ground constitute the survey of a land warrant and control the surveyor's return, even where that calls for a natural or other fixed boundary; and that where lines are not actually run and marked on the ground the survey is to be carried to its calls of adjoiners, even though it overrun the distances returned on the survey, are fixed and familiar rules of property that are not questioned in this case." In Wharton v. Garvin, 34 Pa. 340, page 342, Justice THOMPSON says:  "Generally, a survey is to be carried

to its calls, unless there are actual lines on the ground excluding them."

Pine lots numbers 4 and 5 adjoining lot 3 were surveyed together. No warrant was offered for this tract. There is one patent covering Pine lots 4, 5, 6 and 7. The draft of Pine lots 4 and 5 gives "No. 3," "No. 36, First Division," "No. 6," and "Down Lackawanna" as calls or adjoiners. Pine lot "No. 3," lot "No. 36" and Pine lot "No. 6" we know are adjoiners. In the draft "Down Lackawanna" is used with reference to Pine lots 4 and 5 in the same relation as "No. 3," "No. 36" and "No. 6" are used. Therefore, from the draft, the conclusion is irresistible that "Down Lackawanna" is a call just as "No. 3," "No. 36" and "No. 6" are calls. From this we conclude that Pine lots 4 and 5 extend to the Lackawanna river and therefore that there is no land between them and the Lackawanna river. We are confirmed in this conclusion by the patent for lots 4, 5, 6 and 7, which is some evidence as to the adjoiners, in which the following descripition is given: "Beginning at a corner, thence up Lackawanna river, south seventy-nine and one-half degrees east thirty-three perches and one-tenth to a corner, thence by Lot No. 8 south forty degrees west fifty-seven perches and three-tenths to a corner, thence by Lot No. 36 of the First Division north fifty-three degrees west twenty-nine perches to a corner and thence by Lot No. 3 north forty degrees east forty perches and two-tenths to the beginning."

The draft to the return of survey of Pine lot No. 6 shows the following adjoiners: "No. 5," "No. 36, First Division," "No. 7," and "Up Lackawanna." Here again we know Pine lot "No. 5," lot "No. 36, First Division," and Pine lot "No. 7" are calls or adjoiners. "Up the Lackawanna" is used in the same connection with reference to Pine lot No. 6. Therefore, it is a call or the western boundary of lot No. 6 and there is no land between this lot and the Lackawanna river. The description in the patent covering this lot has been given above.

That we are correct in our conclusion that the Lacka-wanna river is the western boundary of Pine lots numbers 4, 5, and 6, will appear from the following authorities: "In construing the description in a conveyance which bounds the lands conveyed upon a body of water courts incline strongly to such an interpretation of the language as will pass all the riparian rights to the grantee, and it will be presumed, in the absence of a clear showing to the contrary, that the adjacent flats and shore, to the extent of the grantor's rights therein pass as appurtenant to the highland. On the other hand, a grant or conveyance of flats or shore passes no title to upland by presumption." 5 Cyc. 892. In this connection it is well to revert to Klingensmith v. Ground, supra, where the court said: "If the words, 'thence up the creek north,' do not call for the creek as a boundary, why was the creek mentioned at all? The argument on the other side is, that the course being also given, no more is necessary to close the survey. But if the course were sufficient to express the whole intent, we are unable to conjecture why a natural object should have been employed." In Wharton v. Garvin, supra, Justice THOMPSON says: "We are predisposed to presume the existence of an intent to bound surveys on navigable waters by the stream, not only on acount of a supposed advantage arising from such a location, but because it is in accordance with practice." In Wood v. Appal, 63 Pa. 210, on page 221, Justice AGNEW, delivering the opinion of the court says: "Even since the case of Carson v. Blaser, 2 Binney 475, decided in 1810, it has been held in many cases that a survey returned as bounded by a large navigable river, vests in the owner the right of soil to ordinary low-water mark of the stream, subject to the public right of passage for navigation, fishing, etc., in the stream between ordinary high and ordinary low-water mark. Variety in the language of the return matters little, so that the intention to make the stream a boundary appears sufficiently in the description and diagram." And further on

page 224 he says: "The result of the cases is, that when a return of survey calls for a stream as its boundary, or to run by, along, up or down it, the title will run to the stream and the marking of trees on the bank or margin of the stream to identify the lines run to the river, as well as the return, of course and distances measured along the margin, necessarily to ascertain the quantity of land in the survey, will not restrain the title to the bank or margin only."

The plaintiff relies chiefly upon the cases of Kelly v. Graham, 9 Watts 116, and Wharton v. Garvin, 34 Pa. 340, but these cases are clearly distinguishable from the case now before us. This distinction will appear in Wood v. Appal, supra, where Chief Justice AGNEW says, quoting Justice KENNEDY in Kelly v. Graham: "The survey, as returned here by the deputy surveyor, as also all the other evidence on the subject, shows most unequivocally that the river is not made a boundary in it, and indeed that it could not have been so intended. The draft of the survey returned is made out according to the courses and distances actually run and marked upon the ground, and not made to call for the river on any side or point whatever. At some distance from the survey, however, the Allegheny river is laid down upon a straight line without any regard to its meanders, as if it were intended by the artist merely to show that the land included within the survey lay near to the river."

The case of Wharton v. Garvin is distinguished in the following reference by AGNEW: "The diagram exhibited no protraction to the river, and the closing line was represented as a straight line of 238 perches long, leaving a large vacancy between it and the river. The return did not call for the river as a boundary, but it was represented at some distance off with the words written within representation, 'up Allegheny.'" The opinion was written by Justice THOMPSON, the present Chief Justice, who was careful to distinguish the case upon its facts. He remarked that generally a survey is to be

carried to its calls unless there are actual lines on the ground excluding them; that a call to stand as a boundary must be indicated to be such with sufficient certainty to show that it was so intended. The representation of an object at a distance from a closing line without any words indicative of an intent to make it a boundary would hardly be sufficient to constitute it such. The line plotted at a distance would have little weight, he remarked, if the river had been made the call, and as it is not so made in terms and appears to be excluded by the draft, it is a circumstance of controlling influence, as held in Kelly v. Graham, supra. Thus it was the intent of the surveyor (appearing clearly in the return of survey) to bound the survey on the 238 perch line, and not on the river, which controlled the decision. Instead of impugning the general doctrine the case supports it, and the judge remarked: "We are predisposed to presume the existence of an intent to bound surveys on navigable waters by the stream, not only on account of the supposed advantage arising from such location, but because it is in accordance with practice."

There are other reasons to support the conclusion to which we have already come, that the western boundary of Pine lots 4, 5, and 6 is the Lackawanna river, but it is unnecessary to refer to them.

Whether or not the Lackawanna river was a call and the western boundary of lots numbers 3, 4, 5 and 6 is a question of law for the court and not of fact for the determination of the jury. "What are boundaries is a matter of law for the court; where they are, a matter of fact for the determination of the jury under proper instruction from the court." 5 Cyc. 969. "The meaning of a deed, that is, what it covers, is a question of law for the court; what the boundaries of a given piece of land are is a question of construction for the court also; where they are is a question of fact for the jury." 4 Am. & Eng. Enc. of Law, 2 Ed. 809. "Where the boundary lines of a grant are fixed by the grant itself, the question as to

what these lines are is purely one of law." 3 Enc. of Plead. and Prac. 676.

As the Lackawanna river is the western boundary of Pine lots numbers 3, 4, 5 and 6, and as the land in dispute is located within them, the jury should have been instructed to find a verdict for the defendant. The question of the location of this boundary having been submitted to the jury and a verdict rendered for the plaintiff, the motion for judgment non obstante veredicto should now be sustained.

Verdict for plaintiff for the land described in the writ. The court subsequently entered judgment for defendant n. o. v. Plaintiff appealed.

*Error assigned,* among others, was the judgment of the court.

*S. B. Price,* with him *C. S. Price* and *J. H. Price,* for appellant, cited: Lehigh Valley C. Co. v. Beaver L. Co., 203 Pa. 544; Gander's Lessee v. Burns, 4 Dall. 111, 122; Tyrone M. & M. Co. v. Cross, 128 Pa. 636-650; Salmon Creek L. & M. Co. v. Dusenbury, 110 Pa. 446; Collins v. Clough, 222 Pa. 472; Kennedy v. Lubold, 88 Pa. 246, 257; Wilson v. Marvin, 172 Pa. 30; Agnew v. Lewis L. & M. Co., 218 Pa. 505; Wharton v. Garvin, 34 Pa. 340; Kelly v. Graham, 9 Watts 116, 118; Brolasky v. McClain, 61 Pa. 146; Packer v. Schrader M. & M. Co., 97 Pa. 379; Reilly v. Mountain Coal Co., 204 Pa. 270; Malone v. Sallada, et al., 48 Pa. 419; Wood v. Appal, 63 Pa. 210; Walker v. Smith, 2 Pa. 43; Northumberland Coal Co. v. Clement, 95 Pa. 126; Younkin v. Cowan, 34 Pa. 198; Wilcox v. Snyder, 22 Superior Ct. 451; Thomas v. Hatch, 3 Sumner (U. S.) 170; Hopkins v. Kent, 9 Ohio 14; Howard v. Ingersoll, 13, 54 U. S. 379, 416; Dunlap v. Stetson, 4 Mason 349; Bowman v. Farmer, 8 N. H. 402; Rain v. Rains, (Ky.), 20 S. W. Repr. 1099; Wharton v. Brick, 8 Atl. Repr. 529; Brown v. Willey, 42 Pa. 205.

James H. Torrey, of Welles & Torrey, and John P. Kelly, of O'Brien & Kelly, for appellee, cited: County of St. Clair v. Livingston, 90 U. S. 46-49; Klingensmith v. Ground, 5 Watts 458; Cox v. Couch, 8 Pa. 147; Wood v. Appal, 63 Pa. 210; Ake v. Mason, 101 Pa. 17.; Pringle v. Rogers, 193 Pa. 94; Hall, et al., v. Powell, 4 S. & R. 456; Paul v. Carver, 26 Pa. 223; Bleim v. Daubenspreck, 169 Pa. 282; Heath v. Armstrong, 12 Pa. 178; Grant v. White, 63 Pa. 271; Wharton v. Garvin, 34 Pa. 340; Ferguson v. Bloom, 144 Pa. 549; Buckley v. Blackwell, 10 Ohio 508; Jackson v. Louw, 12 John. (N. Y.) 252; Rogers v. Mabie, 15 N. C. 180-194; Wharton v. Brick, 49 N. J. Law 289; 8 Atl. Repr. 529; Hartsfield v. Welsbrook, 2 N. C. 297; Brown v. Hueger; 62 U. S. 305; Slade v. Ethelridge, 35 N. C. 353; 57 Amer. Dec. 557; French v. Bankhead, 11 Grat. (Va.) 136.

PER CURIAM, July 1, 1914:·

Whether· the Lackawanna river was a call of ·senior surveys and a boundary line of the land in dispute was submitted to the jury and their verdict was for the plaintiff. A different finding would have established conclusively the defendant's right and have entitled it to judgment in its favor. On its motion for judgment non· obstante veredicto the court properly held that the· question was one of construction. What are boundaries is a matter of law for the court to be determined by construction of the deed or survey; where they are is a question· of fact for the jury. We are not convinced of error in the conclusion reached that the surveys called for the river as a boundary and we affirm the judgment entered in the Common Pleas for the reasons stated in the, opinion of Judge JOHNSON, specially presiding at the trial.