# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Snow Shoe Township, a          :
Pennsylvania Municipal Corporation  :
                                  :
              v.             : No. 1209 C.D. 2016
                                  : Submitted: January 13, 2017
Boggs Township, a Pennsylvania   :
Municipal Corporation,           :
                                  :
             Appellant    :

BEFORE:   HONORABLE MARY HANNAH LEAVIT, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                **FILED: August 1, 2017**

Before this Court is the appeal of Boggs Township, a Pennsylvania Municipal Corporation (Boggs Township), from the June 23, 2016 order of the Court of Common Pleas of Centre County (Trial Court) overruling the exceptions filed by Boggs Township to the March 15, 2016 Report of the Board of Boundary Commissioners (Board), which followed the Petition filed on September 11, 2013 by Snow Shoe Township, a Pennsylvania Municipal Corporation (Snow Shoe Township), to ascertain the boundary line between Boggs Township and Snow Shoe Township. For the following reasons, we affirm.

Boggs Township and Snow Shoe Township are second class townships located in Centre County, Pennsylvania. The Second Class Township Code[1] (Code), 53 P.S. §§ 65101-68701, provides for the ascertainment of disputed

---

[1] Act of May 1, 1933, P.L. 103, *reenacted and amended by* the Act of July 10, 1947, *as amended*, 53 P.S. §§ 65101-68701.

boundary lines by petition to the court of common pleas. Section 302 of the Code, 53 P.S. § 65302. Once a petition has been filed, the court of common pleas

> [S]hall appoint three impartial citizens as commissioners, one of whom shall be a registered surveyor or engineer, to inquire into the request of the petition. After giving notice to parties interested as directed by the court, the commissioners shall hold a hearing and view the lines or boundaries; and they shall make a plot or draft of the lines and boundaries proposed to be ascertained and established if they cannot be fully designated by natural lines or boundaries. The commissioners shall make a report to the court, together with their recommendations. Upon the filing of the report, it shall be confirmed nisi, and the court may require notice to be given by the petitioners to the parties interested.

Section 303 of the Code, 53 P.S. § 65303. Pursuant to the statutory authority provided by the Code, the Trial Court appointed the Board on October 31, 2013. Following discovery, Boggs Township filed a motion to establish the boundary line between the two Townships along the southern branch of Beech Creek. On June 25, 2014, the Trial Court held a conference with counsel for both Townships and issued an order memorializing an agreement between the Townships that the Board shall determine the boundary line, that thereafter either Township may file objections if it takes issue with the Board's determination, and that the motion filed by Boggs Township and the reply and new matter filed by Snow Shoe Township would be held in abeyance pending the outcome of the Board's determination.

Pursuant to the course of action set forth in the Trial Court's order, the Board held its first hearing on February 23, 2015. On October 15, 2015, the Board held a second hearing to allow for testimony and evidence to be submitted

2

regarding the generation of a set of three (3) geographic coordinates using global positioning survey (GPS) equipment in order to establish the geolocation of the boundary line and to permit the Board to view the geographic coordinates using a computer program known colloquially as "Google Earth," that maps and represents the earth based upon satellite imagery, aerial photography, terrain elevation data, and data gathered from geographic information systems.

During the October 15, 2015 hearing, Mark Saville of Sweetland Engineering and Associates, Inc. (Sweetland Engineering), which had been served with a subpoena during discovery, testified and a question arose as to whether all information responsive to the subpoena had been produced by Sweetland Engineering. On October 20, 2015, Boggs Township filed a motion to compel Sweetland Engineering to comply with the earlier issued subpoena and on October 30, 2015, Sweetland Engineering produced to Boggs Township additional information responsive to the subpoena. On November 5, 2015, arguing that the Board had been denied the opportunity to take evidence regarding the additional information within Sweetland Engineering's possession, Boggs Township filed a motion to appoint a replacement Board. On December 11, 2015, the Trial Court issued an opinion and order denying the motion. In its opinion, the Trial Court concluded the motion was premature and lacked support in the Code, which unambiguously establishes the exclusive procedure for challenging a report issued by the Board.

On March 15, 2016, the Board filed its report. The report relies upon a 1992 surveyor's report prepared by Sweetland Engineering for its recommendation of a boundary line, as supplemented by a representation of the correct GPS coordinates along the boundary line between the two Townships, and

3

the report discusses the proceedings before the Board. On March 22, 2016, the Trial Court confirmed the Board's report *nisi*. Thereafter, on April 23, 2016, Boggs Township filed exceptions to the Board's report.

The Trial Court held a hearing to address Boggs Township's exceptions on June 2, 2016. On June 23, 2016, the Trial Court issued an order and opinion overruling the exceptions filed by Boggs Township, which Boggs Township has appealed to this Court for review. This Court issued a briefing schedule on September 15, 2016, with which both Townships complied, and this matter was submitted on brief for disposition of the issues raised on appeal by Boggs Township on January 10, 2017. Subsequent to this Court's order that the instant appeal be submitted on briefs for disposition, our Supreme Court issued a decision in *Adams Township v. Richland Township*, 154 A.3d 250 (Pa. 2017), which addresses use of the doctrine of acquiescence in the resolution of a dispute over uncertain boundaries and holds that the doctrine was properly applied by the board of commissioners because the board was unable to ascertain the original location of the boundary in dispute. Prior to reaching its holding in *Adams Township*, the Court engaged in an extensive review of the constitutional, statutory and common law authority out of which the procedure for resolving a true boundary dispute developed in the Commonwealth.

Of particular significance to the matter before us is the Court's discussion in *Adams Township* of the appropriate standard of review and the role of the board, the trial court, and an appellate court reviewing a boundary report issued by the board:

> Because resolution of a municipal boundary dispute
> requires commissioners to determine the legally correct

4

boundary, those commissioners are not restricted to considering only the lines proposed by an interested party, and there is no burden of proof to be allocated. When a trial court appoints a board of commissioners to determine the location of a municipal boundary, the board serves as the fact-finder and possesses the exclusive prerogative to determine the weight of the evidence presented. The board's determination has the force and effect of a jury verdict and, therefore, when there is legally competent testimony to support the order, it will not be disturbed by a reviewing court. Section 303 of the [Code] directs that, when a board files its report and recommendation with the appointing court, "it shall be confirmed nisi." [footnote omitted] 53 P.S. § 65303. A reviewing court may not disturb the board's determination unless the board committed an error of law or its conclusion was not supported by competent evidence.

*Id*. at 258-259 (internal citations omitted). The Court stressed that "[a]s the fact-finder, it is the board's prerogative to weigh the evidence, to make credibility determinations, and to decide whether the evidence is sufficient to support a conclusion that the true boundary lies in a particular place, or whether, instead, the location of a disputed boundary remains uncertain." *Id*. at 265. Furthermore, the Court cautioned that while a board's statutory duty is discharged where it is able to determine from the evidence the precise location of the boundary, "that duty does not require the board to resort to speculation or conjecture," and instead, the board may consider whether a township's long acquiescence to a boundary line, such as for purposes of taxing or for the provision of services, supports the adoption of a particular boundary line. *Id*.

The Court's discussion in *Adams Township* of the board's role as the fact-finder in a boundary dispute explicitly rejected this Court's holding below on

5

the basis that this Court invaded the board's exclusive province as the finder of fact by commanding that the record be reopened for the provision of additional evidence. *Id*. at 266. Instead, the Court concluded that "if a [board] believes that the provision of additional evidence will aid in its determination, it may direct the parties to provide such evidence, as the board did in [*In re Petition of Viola*, 838 A.2d 21, 24 (Pa. Cmwlth. 2003)]," where the decision to reopen the record was made by the board and not a reviewing court. *Adams Township*, 154 A.3d at 266. The Court again rooted its conclusion regarding the authority of the board in a boundary dispute to the board's ultimate determination having "the force and effect of a jury verdict." *Id*. (citation omitted).

Before this Court, Boggs Township raises four issues that question whether the roles played by the Trial Court and the Board in resolving the boundary dispute between the two townships led to errors of law. First, Boggs Township argues that the Trial Court committed an error of law by failing to give the Board sufficient direction as to what the boundary was. Second, Boggs Township argues that the Trial Court committed an error of law by not requiring the Board to issue a more comprehensive report of its findings and to allow a description of the boundary line that did not include metes and bounds. Third, Boggs Township argues that the Trial Court erred by not requiring the Board to conduct an in person view of a portion of the boundary line and to rely instead on aerial photography. Lastly, Boggs Township argues that the Trial Court committed an error of law by either not appointing a new board or requiring the Board to hold additional hearings when evidence responsive to a subpoena issued during discovery, which was not produced, came to light following testimony at the October 15, 2015 hearing.

6

Boggs Township's first argument rests upon the distinction between the role of the Board as fact-finder and the Trial Court's plenary standard of review over issues of law. Boggs Township contends that it is the duty of the Trial Court to instruct the Board as to what the original court-approved boundary was based on official records so that the Board may then carry out its proper function of physically locating where the boundary line is.

In support of this argument, Boggs Township relies upon *Miles Land Co. v. Hudson Coal Co.*, 91 A. 1061 (Pa. 1914), an action in ejectment where the defendant sought judgment notwithstanding the verdict. *Miles Land* centers upon a dispute over whether the courses and distances given in the surveys of two grants of adjoining tracts of land should control or whether the Lackawanna River, a natural monument called as the western boundary in the survey, was determinative.[2] Our Supreme Court affirmed *per curiam* the grant of judgment

---

[2] *Miles Land* sets forth several rules of construction regarding boundary disputes that are helpful in understanding the issues presented in the instant matter. First,

> where land is described by courses and distances, and also by calls for adjoiners, the latter, where there is a discrepancy, invariably govern; and it is as applicable to conveyances as it is to official surveys. By reason of imperfection of instruments, as well as inequalities of surface and carelessness of assistants, extreme accuracy is not to be attained by the compass and chain; while, on the other hand, calls for natural objects, or, what is much the same, known and established lines of contiguous tracts, admit of perfect certainty. When a vendor, therefore, conveys by established landmarks, the subject of the grant will neither overrun nor fall short of them. They form the true boundary, and the courses and distances serve but to point towards the place.

91 A. at 1062 (internal citations omitted). Second,

> [t]hat lines actually marked on the ground constitute the survey of a land warrant, and control the surveyor's return, even where that calls for a natural or other fixed boundary, and that where lines are not actually run and marked on the ground the survey is to be

7

notwithstanding the verdict in *Miles Land,* explicitly relying on the trial court's conclusion that:

> Whether or not the Lackawanna river was a call, and the western boundary of lots numbers 3, 4, 5, and 6, is a question of law for the court, and not of fact for the determination of the jury. What are boundaries is a matter of law for the court; where they are, a matter of fact for the determination of the jury under proper instruction from the court. **The meaning of a deed— that is, what it covers—is a question of law for the court; what the boundaries of a given piece of land are is a question of construction for the court also; where they are is a question of fact for the jury.** Where the boundary lines of a grant are fixed by the grant itself, the question as to what these lines are is purely one of law.

91 A. at 1064 (emphasis added, internal citations omitted); *see also Norwich v. Beaver,* 474 A.2d 329, 330 (Pa. Super. 1984) ("This court has also repeatedly said '[t]he question of what is a boundary line is a matter of law, but where a boundary line, or corner, is actually located is a question for the trier of fact.'" (internal citations omitted)). Our Supreme Court held in *Miles Land* that the trial court properly entered judgment notwithstanding the verdict because the Lackawanna River was used as a call in the survey, the rules of construction mandate that calls are controlling over descriptions by courses and distances when determining the

---

> carried to its calls of adjoiners, even though it overrun the distances returned on the survey, are fixed and familiar rules of property that are not questioned in this case. Generally, a survey is to be carried to its calls, unless there are actual lines on the ground excluding them.

*Id*. at 1063 (internal citations omitted).

bounds of a grant to settle a dispute over a boundary line, and questions regarding the meaning and intent of a deed are for the court rather than the jury.

However, *Miles Land* does not support the conclusion that the Trial Court committed an error of law in the instant matter. Unlike in *Miles Land*, the dispute here did not center upon the meaning and intent found within the four corners of an official document. Instead, one of the difficulties the Board was presented with in discharging its duty was the absence of official records of the original boundary between Boggs Township and Snow Shoe Township. As a result, unlike in *Miles Land*, the issue is primarily one of fact rather than law.

Support for the conclusion that the Trial Court properly refrained from addressing factual rather than legal issues can be found in the very argument made by Boggs Township; although it contends that the Trial Court erred in failing to give greater direction to the Board, its argument is primarily supported by a reweighing of the evidence before the Board to persuade this Court that the Board lacked competent evidence to support its determination. Whether or not the evidence is sufficient to support the Board's ultimate boundary determination is a distinct question from whether the Board and the Trial Court performed their proper functions.

The lynchpin of Boggs Township's argument is that the Board erroneously relied upon and adopted a surveyor's report that had been filed with the Trial Court as a part of a boundary dispute in 1992 because this report improperly relied upon field notes from an 1856 survey, which contains discrepancies, and for which records of a court commission were not found. When presented with this issue below, the Trial Court concluded that:

9

> Boundary commissions traditionally rely on the previous and historical work from surveyors reports to complete their work. Moreover, the Court believes the [Board] would have wrestled with and resolved any alleged discrepancies in coming to its ultimate conclusion. In addition to the statutory authority, a reason courts appoint boundary commissions to ascertain township lines is because the members are in a much better position than a court to evaluate the technical evidence and determine the appropriate location of a line. As such, the Court cannot conclude that it was error for the [Board] to use and rely upon historical survey notes, and to accept the 1992 Report.

(Trial Court Op. at 3.) We agree. The Trial Court did not err in concluding that the issue was one of fact and not law, and therefore properly within the province of the Board.

Boggs Township's next argument is essentially that the report issued by the Board was insufficient—Boggs Township asserts that the report did not contain delineated findings of fact, did not make explicit credibility determinations, and did not discuss the Board's resolution of discrepancies in the record. Separate but related to this issue is Boggs Township's contention that the Board erred by using aerial imagery and GPS technology to locate the boundary line.

The Code provides the exclusive remedy for resolving a boundary dispute. Where a boundary between townships is disputed, there is no burden of proof to be allocated. *Moon Township v. Findlay Township*, 553 A.2d 500, 504 (Pa. Cmwlth. 1989). A reviewing court may only disturb a boundary commission's determination where it is not supported by competent evidence; inconsistencies in the evidence go to the weight of the evidence, not its

10

competence, and do not compel a reviewing court to grant relief any more than inconsistent evidence requires entry of a judgment notwithstanding a jury's verdict. *In re Petition of Viola*, 838 A.2d 21, 27 (Pa. Cmwlth. 2003). The Code specifies that a boundary commission shall consist of three impartial citizens, one of whom shall be a registered surveyor or engineer. Section 303 of the Code, 53 P.S. § 65303. The Code requires that the boundary commission hold a hearing, view the lines or boundaries, and that if the lines or boundaries cannot be fully designated by natural lines or boundaries, the Code requires that the boundary commission shall make a plot or draft of the lines and boundaries proposed to be established. *Id*. Finally, the Code requires that the boundary commission make a report and recommendation to the court. *Id*.

The report and recommendation made to the Trial Court by the Board states that the Board:

> Hereby adopt as their report the Surveyor's Report dated April 29, 1992, prepared by Sweetland Engineering and Associates, Inc. which was previously adopted in the matter filed to No. 91-239 in this Honorable Court, which Surveyor's Report is attached hereto as Exhibit "A". The information in this Surveyor's Report is supplemented by the Exhibit filed to the above captioned term and number as Petitioner's Supplemental Exhibit No. 1 which is a representation of the correct GPS coordinates for points on the boundary line between Snow Shoe and Boggs Township in PA North Zone NAD 83 US Feet Datum, which Exhibit is also attached hereto as Exhibit "B". Those Exhibits, together with the Outline of Proceedings filed herewith shall constitute the Report of the undersigned [Board].

11

(Board Report at 1, Reproduced Record (R.R.) at 670a.)  The Outline of Proceedings referred to by the Board details the filings made by the two Townships and the evidence, both in the form of testimony and documents, submitted into the record for review by the Board.  At the close of the report, the Board states:

> Following the first hearing the Board had made a preliminary determination that no evidence had been presented to upset the decision of the previous Board in adopting the April 29, 1992 Surveyor's Report of Sweetland Engineering; however the surveyor on the current Board had recommended that at least 3 points on the boundary line established by the prior Board, and adopted by the current Board, be documented by GPS coordinates.  The October 15, 2015 hearing was held for that limited purpose, and to view those coordinates by means of Google Earth satellite view.  The current Board had concluded that it was not feasible and would serve no useful purpose to physically go to the points along the boundary line since they were located in very remote locations.  Accordingly this Board treated the view through Google Earth satellite as their [sic] view of the boundaries as required by [Section 303 of the Code], 53 P.S. § 65303.
>
> Should this report be confirmed by this Honorable Court it is recommended that the three GPS coordinates set forth on Exhibit "B" be monumented at their ground location using permanent monuments by Snow Shoe Township.

(Board Report at 29, R.R. at 699a.)

We are unpersuaded by Boggs Township's argument that the Board's report is insufficient.  There is nothing in the Code that requires the Board to delineate findings of fact and conclusions of law.  The standard of review for a

12

reviewing court questions whether a boundary commission's ultimate determination is supported by competent evidence; therefore, beyond a requirement that a boundary commission articulate its ultimate determination, the standard of review necessitates that the boundary commission does so in a manner that allows for review of the record by a court for competent evidence.

In the instant matter, the Board's report reviews the evidence submitted into the record and identifies the record evidence it found persuasive. Whether or not a different determination could have been made based on the record before the Board is immaterial. Rather, the sole question for this Court is whether the evidence the Board did rely upon is competent. While Boggs Township has identified inconsistencies in the 1992 Surveyor's Report prepared by Sweetland Engineering that the Board relied upon in making its recommendation, such inconsistencies go to the weight of the evidence, not its competency. The Board's report was not legally insufficient because it lacked findings of fact, conclusions of law, and a discussion of how it resolved inconsistent evidence. Rather, the Board's report identified the evidence of record and provided the trial court with its ultimate determination of the boundary line, which was sufficient to satisfy the Board's duty under the Code.

Similarly, the Board did not err by using aerial imagery and GPS technology to locate the boundary line. The Code does not specify how a view must be conducted. While the understanding of what is denoted by the term "view" and the means by which a view is conducted is informed by the past, the text of the statute does not freeze the term or the means in past practices. As the Trial Court stated, the evidence showed that part of the line lies in rough and rocky terrain and that:

13

> To require that each Commissioner personally travel into terrain comprised of cliffs, boulders, thickets of impenetrable rhododendron, and a menagerie of wild critters containing fangs, claws, and other dangerous and offensive weapons is unjust and unreasonable. In this day and age, to require that a Commissioner view a certain rock by standing upon it, rather than by viewing it from the air, will not only preclude the Court from selecting any but the most able-bodied and youthful applicants, but also might make recruitment of willing commissioners impossible.

(Trial Court Op. at 3 n.2.) The inability to conduct a view in difficult terrain is perhaps why some boundary lines remain unclear today. Regardless, unless the method used to conduct a view is shown to be so unreliable that it is established that the statutory duty of the boundary commission to conduct a view has not been discharged then the question of how the view was conducted is an evidentiary rather than a legal question. Here, Boggs Township has not shown that the method used to conduct the view was so unreliable as to fail to constitute a view. Accordingly, the use of aerial mapping and other current software to conduct a view was not error.

Finally, Boggs Township argues that the Trial Court should have appointed a new boundary commission or required the Board to hold additional hearings once testimony revealed that Sweetland Engineering had failed to produce all of the information within its possession that was responsive to Boggs Township's subpoena. This argument is without merit. The Board's report clearly identifies this alleged new evidence, along with the filings seeking a new boundary commission, as part of the record before the Board when it made its determination. Once the information Sweetland Engineering had failed to produce came to light, it

14

was within the Board's discretion to hold or forego a new hearing. The Board declined to hold an additional hearing. There is absolutely no legal basis upon which to conclude the Board erred in its exercise of discretion or the Trial Court erred by concluding that appointment of a new boundary commission was not warranted.

Accordingly, we hold that the Trial Court did not err in overruling the exceptions filed by Boggs Township.


_____
**JAMES GARDNER COLINS, Senior Judge**

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Snow Shoe Township, a : 
Pennsylvania Municipal Corporation : 
  : 
  : 
v. : No. 1209 C.D. 2016
  : 
Boggs Township, a Pennsylvania : 
Municipal Corporation, : 
  : 
Appellant : 

# O R D E R

AND NOW, this 1st day of August, 2017, the order of the Court of Common Pleas of Centre County in the above-captioned matter is AFFIRMED.

**_____**
**JAMES GARDNER COLINS, Senior Judge**