## Chew *against* Morton.

The board of property have no power to vacate a patent once granted.
A division line, although made by mistake, can not be altered after thirty years' acquiescence by the parties.

ERROR to the common pleas of *Beaver* county.

This was an action of ejectment by Benjamin Chew against Mary Morton, to recover the possession of 25 acres of land, lying in Beaver county, north and west of the rivers Ohio and Allegheny and Conewango creek, which came within the provisions of the act of the 3d of April 1792, and were to be sold and disposed of by the commonwealth upon the terms and conditions prescribed by that act. The plaintiff claimed under a warrant granted to John Nichols, dated the 4th of January 1794, for 400 acres, and a survey made, in pursuance thereof, on the 31st of January 1795, stating its contents to be 400 acres and allowance of 6 per cent. for road, &c., a deed of conveyance from John Nichols, the warrantee, to James Wilson, dated the 19th of April 1796; a deed of conveyance from James Wilson to Benjamin Chew, the plaintiff, dated the 20th of April 1795; each deed embracing the 400 acres surveyed under the warrant granted to John Nichols, of which the 25 acres claimed by the plaintiff formed a part; and a patent of confirmation from the commonwealth for the whole tract and survey, to the plaintiff and the legal representatives of John Morton, deceased, dated the 28th of November 1832. The defendant derived her claim or title to the land in dispute from the plaintiff; and accordingly gave in evidence an agreement, dated the 23d of October 1799, made in writing between the plaintiff, by his attorney John Hage, of the first part and John Morton of the second part, by which it was agreed that Morton should forthwith take possession of the tract of land surveyed as above mentioned under the warrant granted to John Nichols, and make an actual settlement and continue and complete the same according to the requirements of the act of the 3d of April 1792, on the east end of the said tract, within 200 acres part thereof, which were divided off by lines run at right angles, adjoining Braden's district line, so as to include the improvements, which Morton had previously made on the said tract: and that the said Morton, while employed in performing the covenants therein mentioned to be performed on his part, should peaceably and quietly occupy and enjoy the said 200 acres without lawful interruption or disturbance of any person whomsoever, and that the said Chew, upon the said Morton's performing his cove-

x.—2 c

[Chew v. Morton.]

nants, would immediately, on the expiration of five years from the said Morton's first residence on the said tract, by sufficient deed grant, convey, and assure unto the said John Morton, his heirs and assigns, all the aforesaid lot of 200 acres in fee simple, free and clear from all incumbrances whatsoever; also a patent from the commonwealth to Benjamin Chew and John Morton, June the 20th, 1817, granting and confirming to each their several proportions of the whole tract, according to the agreement aforesaid made between them and the division of the land therein mentioned. The defendant further gave evidence of a survey made for Morton, by Joseph Hemphill, on the same day of the date of the agreement before stated between Chew and Morton, dividing off from the residue of the tract, what was then considered 200 acres, but has since been discovered to contain about 219 acres, in the manner described in the agreement, which appeared to be the only division of 200 acres that had then been made, by running lines as mentioned in the agreement; that Morton continued to reside with his family upon the land until he fulfilled his agreement, and afterwards until his death, which took place about 1821, occupying, clearing and improving the 200 acres every year to the full extent of the lines run and marked by Hemphill, without any objection being made by Mr Chew. That after the death of Morton, upon a proceeding had in the year 1828, in the orphans' court of Beaver county, at the instance of Robert A. Morton, a son of the said John Morton, the 200 acres, as it had been occupied, were duly appraised, and decreed by the said orphans' court to the said Robert A. Morton, who elected to take the same at the appraisement; and having done so, occupied it as his father had done, without objection, until he conveyed it to the defendant, who thereafter continued the occupation of it in the same manner, without objection, until shortly before the commencement of this action. It also appeared that the whole tract or survey contained 500 acres instead of 400; and of the 500 acres it was conceded by the plaintiff that the defendant was entitled to 200 acres. But the contest between the parties was for the excess beyond the 200 acres in that portion of the tract, which had been separated from the residue by the survey and lines made and marked by Hemphill. The excess was between 19 and 20 acres. It appeared also, that the board of property, when they granted the patent of 1832, undertook to annul and vacate the patent of 1817, upon an *ex parte* hearing of the plaintiff, which the court below (Bredin, president) decided they could not do. The court also charged the jury, that as the agreement between Chew and Morton seemed to recognise the partition of the 200 acres, made by the lines run and marked by Hemphill, though done at the request of Morton, and there had been an acquiescence in it by both parties from that time until shortly before the commencement of this action, it must be considered conclusive and binding upon them; so that neither could then alter or change

*[Chew v. Morton.]*

it without the consent of the other, although it might contain more or less than 200 acres. The counsel for the plaintiff excepted to the opinion of the court on these points, and now allege that the court erred therein.

*Shaler,* for the plaintiff in error.

*Agnew,* for the defendant in error, cited on the first point, *Purd. Dig.* (1830) 121, 122; 7 *Serg. & Rawle,* 156; and on the second point, 4 *Watts* 263; 2 *Watts* 396; 7 *Ibid.* 94; 3 *Johns.* 269; *Adams on Ejectment* 54. 77; 2 *Penns. Rep.* 539; 2 *Watts* 318; *Blanchard on the Stat. of Limitations,* 1 *Law Libr.* 32, 33.

The opinion of the court was delivered by

KENNEDY, J.—On the first point the court below were clearly right in deciding that the board of property had no power or authority to revoke or vacate a patent after it had been executed and delivered to the patentees. Before a patent, which is demanded, has been granted, objections to its being issued may be entertained and decided on by the board; and in doing so, they have the right undoubtedly, and are bound, either to grant or withhold it as they, in their best judgment, shall think it expedient. Their decision, however, can scarcely be said to be binding, much less conclusive upon either of the parties interested therein; for if the board should refuse to grant the patent, through error of judgment, when it ought to be granted, they may be compelled to do so by a writ of mandamus from this court; and if on the other hand, they should grant it to one not entitled to it, it will be treated by this court or any other court, where the patentee shall claim to have acquired a right by means of it, either as a nullity or as enuring to the benefit of the party to whom of right it ought to have been granted. In Foster *v.* Shaw, 7 *Serg. & Rawle* 161, this court held that the board of property had no legitimate power to vacate a patent, on the ground that it had been obtained by a forged conveyance. And the late Mr Justice Duncan, in delivering the opinion of the court, says "this authority is confined to cases of imperfect titles, warrants, locations, rights of pre-emption, promises. 2 *Smith's Laws* 13; *Act of the 5th of April* 1782. But this body possesses no judicial power. It is for them to say in the first instance, to whom the patent shall issue. But this does not decide the right of the claimant. It is open to them for trial by jury, as if no decision of the board had been made. But they can issue no *scire facias* to repeal a patent, to call in and cancel one patent and issue another. The legislature have conferred no such power on them."

On the second point, we also think that the court were right. The agreement between Chew and Morton speaks of the 200 acres which Morton was to have, as having been divided off by lines

[Chew v. Morton.]

run at right angles, so as to include his improvements, adjoining Braden's district line; and it having been abundantly proved on the trial, without the least contradiction, that the only line of division of the kind made at that time, was that made by Hemphill, it was right that the jury should consider it as the line of division mentioned in the agreement; and it was not error in law certainly, on the part of the court below, in charging the jury, to speak of or treat it as such. It seemed to be the only, and at the same time inevitable, conclusion arising from the facts and circumstances most incontestably proved. This being the case, it could not be error on the part of the court to instruct the jury that such line, although made by Hemphill at the instance of Morton, yet having been recognised by both parties in their agreement, and acquiesced in afterwards, without objection for more than the space of thirty years, was to be regarded as binding and conclusive in the absence of proof showing fraud. The peace and welfare of society depend much upon a strict adherence to land-marks and boundaries, which have been long established and acquiesced in, though originally founded in mistake. It is not only a rule of sound policy, but becomes one of the greatest justice after a considerable lapse of time, when the party has made valuable improvements which would be impaired or taken away by a correction of the mistake; or when the property has gone into the hands of innocent purchasers, as in this case, for a valuable consideration. It is a rule which has ever been observed by the commonwealth in regard to the boundaries of lands granted by her, in which mistakes are made every day by surveyors against her interest, by including more lands within the boundaries of the survey than the quantity reported by the return thereof. Even in this case, it appears that the surveyor, on behalf of the commonwealth, in locating the warrant, under which the parties claim, made a mistake against the commonwealth of 100 acres, for which she has never been paid; and under the rule which seems to have been adopted by the commonwealth, not to correct such mistakes after the grant has been carried into effect, and the title to the land been perfected, she never can demand or receive payment for it; so that Mr Chew, upon the whole, instead of being a loser by the mistakes which have been committed in surveying the land originally and in dividing it afterwards, is greatly the gainer by being the owner of nearly 80 acres more land than he would have been if no mistake had taken place. In truth it may be said that he has never paid for the land claimed in this action, and that he is not now liable to pay any thing for it. If the commonwealth could in any way obtain payment for it now it would be by proceeding against the land itself, which would tend to prejudice the defendant instead of the plaintiff.

Judgment affirmed.