Allison et ux., Appellants, *v.* Oligher et ux.

Argued May 8, 1940.

Before CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Henry E. Shaw,* with him *A. C. Scales,* for appellants.

*Edw. P. Doran,* for appellees.

OPINION BY PARKER, J., July 19, 1940:

This action in ejectment involves a determination of the true location of the boundary line between adjoining lots located on a public street in the Borough of Derry, that of the plaintiffs being to the west and that of the defendants to the east. To settle the controversy plaintiffs brought the action against defendants for a triangular parcel of land having a frontage of 6.2 feet and coming to a point near the rear of the lots, the east and west lines of such triangle being the boundary locations claimed by the respective parties. The case was tried by a judge without a jury and resulted in a judgment for the defendant. We are all of the opinion that the judgment should be affirmed.

The common source of title was a building and loan association which held the entire tract with a frontage of something more than 120 feet for over ten years. The title of defendants is senior to that of plaintiffs. The defendants' title came from the common source in 1917 under an unrecorded article of agreement and was accompanied by possession of the premises by occupying a house erected on the land. Deed was delivered and recorded in 1927. The recording is not important as visible possession was notice of the title sufficient to put purchasers on notice and require inquiry upon their part: *Harris v. Bell,* 10 S. & R. 38, 43; *Hymen v. Gatta,* 33 Pa. Superior Ct. 438, 440; *Hottenstein v. Lerch,* 104 Pa. 454, 461. The plaintiffs claim title from the common source through deed dated in 1920 and promptly recorded.

The deeds under which defendants claimed called

for a frontage of 60 feet on the public street and a depth of about 85 feet with the rear line some 15 feet shorter than the front one. The deeds for the junior title held by plaintiffs called for a frontage of 60 feet, more or less, extending that distance from a private alley to land of the defendants and following land of defendants to form the eastern line.

Following the courses and distances and adjoiners called for in all the deeds and assuming that there are no monuments on the ground indicating a different location than that called for by the description in the deeds, the triangular parcel in dispute is all within the boundaries of defendants' purchase and they are entitled to a judgment. "Where there are neither monuments applicable to the survey nor calls for adjoiners, the courses and distances must govern": *Green v. Schrack,* 16 Pa. Superior Ct. 26, 29. The plaintiffs proved by their own surveyor that if the adjoiners and the descriptions in the deeds were followed the land in dispute would be within the paper descriptions in defendants' deeds. The descriptions in plaintiffs' deeds limited their eastern line by land conveyed to defendants. Consequently, if plaintiffs are to be allowed to recover they must show that the actual location of defendants' land was marked on the ground at a different location than that called for by the paper descriptions and adjoiners. In fact, plaintiffs accept such burden and claim to have sustained it. This brings us to the real controversy.

For many years there had been an old board fence running northwardly from Second Avenue between the houses of the respective owners of these lots. That fence ran from a point on the avenue 53.6 feet westerly from the southeastern corner of the whole tract and the southeast corner of defendants' land in a northerly direction to another fence located north of the rear of each lot. In 1929 the Olighers replaced the fence with a new one at the same location as the old one, but in

1932 they moved the fence westerly to a line beginning on Second Avenue substantially 60 feet west of the southeast corner of their land as called for in their deed and meeting the line of the old fence near the common corner at the rear of the two lots. The effect of this change was that the Olighers included within the fence line the triangular parcel of land in dispute. It will be noted that there is for all practical purposes no dispute as to the location of the common corner at the rear of the lots. Consequently, the location of the common corner on the avenue determines the controversy. The appellants rely alone on the location of the old fence and the reconstruction of that fence by the defendants. In short, they contend that a line may be established by acquiescence for a period less than 21 years. They take this position by reason of the fact that they were unable to show and did not attempt to show adverse possession for a period of 21 years. Both lots were owned by the building and loan association for a period of at least ten years immediately prior to May 12, 1917, and this action was begun on May 26, 1936.

None of the descriptions in the deeds calls for a fence or other monument and there was no direct evidence of an actual location of either lot on the ground at the time the respective conveyances were made at a location different than that called for by the descriptions employed. There seems to have been special care in each of the deeds from the common source to avoid any reference to a division fence. Had there been such a reference we would have been entitled to go to such fence as fixing the location on the ground; but the base line being determined and having been shown by plaintiffs' own surveyor, it was only necessary to measure the distance of 60 feet from the southeast corner. There is nothing in the descriptions that would warrant reducing the defendants' frontage below 60 feet. This is precisely what was held in *Breneiser v. Davis*, 134

Pa. 1, 19 A. 433, and *Green v. Schrack,* supra, p. 31. The building and loan association had something more than 120 feet frontage and it first sold 60 feet frontage to the defendants' predecessor and the balance to the plaintiffs' predecessor. If plaintiffs' contention is supported they would take almost 70 feet frontage while the defendants would have 53.6 feet.

The appellants also make reference to the fact that the original description in defendants' deed called for a post but no such post has been identified as existing at the present time. The reference to a stake or post in the ground long since gone is not such a monument as is controlling: *Detwiler v. Coldren,* 101 Pa. Superior Ct. 189, 195. "But what sort of a monument is a stake? It is so unsubstantial, that in country surveys, it usually indicates a corner which the surveyor never visited, and which exists only on paper. Artificial boundaries which are meant to be fixed monuments, are made with more care than merely sticking a stake, which the next wind may blow over, which one of a thousand accidents may destroy, and which must rapidly decay, if not otherwise obliterated. So frail a witness is scarcely worthy to be called a monument, or to control the construction of a deed in so important a particular as that under consideration": *Cox v. Freedley,* 33 Pa. 124, 130.

Finally, the appellants urge that mere acquiescence in the location of a division line for a period less than 21 years is sufficient to fix the boundary as a matter of law and more particularly that the existence of this fence under the circumstances was sufficient. Such is not the law in Pennsylvania as we understand it. All that has been held here is that where the recognition and acquiescence have continued beyond the period of 21 years the presumption becomes conclusive. In fact the rule is stated with that qualification in all of our cases: *Brown v. M'Kinney,* 9 Watts 565, 567; *Chew v. Morton,* 10 Watts 321, 324; *Reiter v. McJunkin,* 173 Pa.

82, 33 A. 1012. It is true that a consentable line may be established by conduct of such a solemn nature that we may be said to have a consentable boundary line but such evidence is not ordinarily conclusive but is for the consideration of the fact finding body. The judge trying the case without a jury has found the fact against the plaintiffs and very properly so.

Judgment affirmed.