## Collier and Robinson Townships Boundary Dispute.

Argued March 5, 1973, before President Judge BOW-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

194

*Michael B. Kaleugher*, with him *Rosenberg, Kirshner & Solomon*, for Collier Township.

*Joseph I. Lewis*, with him *Ernest L. Butya*, for Robinson Township.

OPINION BY JUDGE BLATT, April 17, 1973:

In 1874, Collier Township (Collier) was erected out of a part of Robinson Township (Robinson). In 1963 a dispute arose between the townships as to the exact location of their boundaries, specifically Collier's northern boundary line and the southern line of Robinson. The description of this boundary in the 1874 proceeding was as follows: "Thence near the line of Nesbit, Nixon, McMillan & Negley South 100 perches to a post in center of new road on Campbell's Run. Thence up said run by courses of said road. . . ." In the area in question there is a stream known as Campbell's Run (Run) and a road north of the stream and running parallel thereto known as Campbell's Run Road (Road). The area between the two contains 18.75 acres and is made up of a long narrow strip from 50 feet to approximately 200 feet wide. Collier claimed

that the Road was the proper boundary while Robinson claimed that its territory extended to the Run.

When the parties were unable to come to an agreement, Collier filed a petition with the Court of Common Pleas of Allegheny County pursuant to Section 302 of The First Class Township Code, Act of June 24, 1931, P. L. 1206, as amended, 53 P.S. §55302,[1] asking that court to ascertain and establish the boundary between the two townships. As provided in Section 303 of the First Class Township Code, 53 P.S. §55303, the court appointed a commission to consider the merits of the petition and to prepare a report ascertaining the boundary. The commission held hearings, and thereafter filed its report with the court, finding that the Road was intended to be the boundary line between the two townships and re-establishing the Road as the boundary. Robinson filed exceptions to the report with the lower court, which, following argument on such exceptions, reversed the commission and established the Run as the boundary line. Each township has appealed to this Court, and their appeals were consolidated for argument and are dealt with in this opinion.

Collier argues that the lower court erred by substituting its findings and conclusions for that of the commission. It contends that Section 304 of the First Class

---

[1] Section 302 provides: "The courts of quarter sessions may, upon the presentation of a petition signed by at least fifty freeholders, residents of the township, (a) alter the lines of a township and any adjoining township, borough or city so as to suit the convenience of the inhabitants thereof; (b) cause the lines or boundaries of townships to be ascertained and established; and (c) ascertain and establish disputed lines and boundaries between two or more townships or between townships and cities or boroughs. When any such petition is presented, the court may require the petitioners to file a bond in sufficient sum to secure the payment of all costs of the proceeding."

Township Code, 53 P.S. §55304,[2] limits the court to considering only questions of law, and, if the court disapproves of the commission's findings of fact, it must return the matter to the commission, or to a new commission, to prepare a new report. We agree.

We believe that Sections 303 and 304, 53 P.S. §§55303 and 55304, were intended to assign to a commission the role of fact-finder in cases involving boundary disputes. The order of a commission, as the trier of fact, has the force and effect of a jury verdict and, therefore, when there is legally competent testimony to support the order, it will not be disturbed by a reviewing court. *Cf. North Braddock Borough's Boundary Case*, 126 Pa. Superior Ct. 25, 190 A. 350 (1937). If the reviewing court is dissatisfied with the report of the commission, it is given the authority to refer the matter back to the same or new commissioners for another report. This would be the solution, too, if there was held to be insufficient competent evidence to support the findings of the commission.

Section 304, of course, does give the court authority to sustain exceptions to the commission's report. If this were to mean, however, that the court is empowered to substitute its own findings of fact for those of the commission, it would be inconsistent with the role of

---

[2] "Exceptions to any such report may be filed by any person interested or political subdivision within thirty days after the filing of the report, and the court may thereupon fix a day for the hearing of such exceptions, of which such notice shall be given as the court may direct. *After hearing, the court shall have power to sustain such exceptions or to dismiss them and confirm the report, or refer the report back to the same or new commissioners, with like authority to make another report, on which like legal proceedings may be had.* Where no exceptions are filed within thirty days after the filing of the report, the court shall confirm the same absolutely. When any report is confirmed absolutely, the court shall enter a decree altering or ascertaining and establishing the lines and boundaries as shown in said report." (Emphasis added.)

the commission as the fact-finder. This is especially evident in view of the fact that the court is nowhere authorized to hold de novo hearings on its own. While the reviewing court may act on its own to correct errors of law, any errors with regard to findings of fact which it believes to have been made by the commission may only be referred back to that commission or to a new commission for a new report.

In the case at hand, the matter at issue between the lower court and the commission concerned the meaning of the boundary description drawn up in 1874. This is clearly a question of fact, and the lower court acted improperly by substituting its own finding of fact for that of the commission. We will remand this matter, therefore, to the lower court so as to permit it to reconsider the commission's report. If the lower court remains dissatisfied with the report it may refer it back to the commission or to a new commission for the preparation of a new report, but, if it finds that there is no error of law in the report and that the findings of fact are sufficiently documented, the report should be affirmed. *McCandless Township Appeal*, 401 Pa. 428, 165 A. 2d 23 (1960).

Before both the commission and the lower court, Robinson also argued that, instead of locating the boundary at either the Road or the Run it should instead be placed on the Parkway West, a limited access highway constructed in 1952-1955 and located south of the Run. The area between the Run and the highway contains approximately 30-35 acres. Robinson contends that when Collier filed its petition pursuant to Section 302 of the First Class Township Code, 53 P.S. §55302, the commission was thereafter permitted to alter the boundary lines in any manner which would "suit the convenience of the inhabitants. . . ."

It is, of course, true that a municipality may not annex a substantial portion of the territory of another

municipality under proceedings intended to alter boundary lines. *Indiana Township Lines Alteration Case,* 373 Pa. 319, 95 A. 2d 506 (1953). It is not necessary for us to decide, however, whether or not Robinson's proposal in this instance would constitute an improper annexation, because we agree with the lower court that the commission was limited to a consideration of boundaries as raised in Collier's original petition and the answer and new matter filed by Robinson. We do not decide hereby what the result should be if Robinson on its own initiative properly filed a petition pursuant to Section 302 requesting that the boundary be moved to the Parkway West.

For the above reasons, therefore, we must reverse the order of the court below and remand the record to it for further proceedings consistent with this opinion.