MONTOUR SCHOOL DISTRICT
and Township of Robinson

v.

TOWNSHIP OF COLLIER
and Chartiers Valley
School District.

Appeal of: Township of Robinson.

Montour School District and
Township of Robinson

v.

Township of Collier and Chartiers
Valley School District

Appeal of: Montour School District.

Commonwealth Court of Pennsylvania.

Argued Feb. 12, 2008.
Decided March 10, 2008.

Gregory Gleason and Robert Max Junker, Pittsburgh, for appellants, Montour School District.

Robert J. Garvin, Pittsburgh, for appellant, Township of Robinson.

Howard J. Schulberg, Pittsburg, for appellee, Township of Collier.

David S. Bloom, Pittsburgh, for appellee, Chartiers Valley School District.

BEFORE: SMITH–RIBNER, Judge, and FRIEDMAN, Judge, and KELLEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Montour School District (Montour) and Township of Robinson (Robinson) (together, Montour/Robinson) appeal from the July 3, 2007, order of the Court of Common Pleas of Allegheny County (trial court) granting the joint motion for judgment on the pleadings filed by Township of Collier (Collier) and Chartiers Valley School District (Chartiers Valley) and dismissing Montour/Robinson's complaint with prejudice. We affirm.

In March 2005, the County of Allegheny (County) filed a petition to establish the lot

and block system[1] in Collier. By order dated March 23, 2005, the trial court ordered that the lot and block system be placed in effect in Collier and be ready for public use on Monday, January 2, 2006, and thereafter.[2] (R.R. at 29a.)

By letter dated December 28, 2005, the County Office of Property Assessments notified the parties that the designation of the location of 137 parcels had been changed from Collier to Robinson.[3] (R.R. at 30a–35a.) Until 2005, the County assessment records described these properties, which are located in a development known as Cloverleaf Estates West (Cloverleaf), as being in Collier. The deeds to the properties likewise described their location as Collier. The properties were taxed by Collier and Chartiers Valley as though they were in Collier, and the individuals residing in these properties were taxed as though they resided in Collier. Cloverleaf residents voted in the Collier and Chartiers Valley elections. Collier made available to Cloverleaf residents the same municipal services that it made available to the residents of Collier, and Chartiers Valley provided schooling, including adult education classes, to Cloverleaf residents.[4]

On April 28, 2006, Montour/Robinson filed a complaint in equity seeking: recoupment of real estate taxes on the redesignated parcels paid to Collier and Chartiers Valley for the years 2001–2005; recoupment of taxes collected by Collier and Chartiers Valley from Cloverleaf residents pursuant to the Local Tax Enabling Act (LTEA)[5] for the years 2001–2005; and recoupment of cable television franchise fees paid by Comcast to Collier during the years 2000–2005. (R.R. at 7a–16a.) Counts I and II of the complaint, relating to the recoupment of taxes paid, include a request that the court equitably adjust the taxes, debts and expenses for municipal and school purposes between the affected parties. Collier and Chartiers Valley filed preliminary objections, which the trial court overruled by order dated July 18, 2006, and thereafter filed answers to the complaint. On October 20, 2006, the trial court granted the motion filed jointly by Collier and Chartiers Valley to designate the case as complex.

1. The lot and block system is a method used to locate and identify land. The County uses this method to identify parcels for the registration of land titles, for the accumulation of county tax liens and for the enumeration of parcels of real estate to be taxed by the County and other taxing bodies. Section 701 of the Second Class County Code, Act of July 28, 1953, P.L. 723, 16 P.S. § 3701.

2. Section 706 of the Second Class County Code, 16 P.S. § 3706, provides that the trial court shall order the lot and block system placed in effect as of the first Monday of the January next succeeding the order, here January 2, 2006.

3. By way of background, the boundary lines for Collier were created in 1874. When the highway known as the Parkway West was constructed near the boundary between Collier and Robinson, the presence of the road increased the value of commercial real estate in the area, leading to a dispute as to the proper boundary line. In 1967, Collier filed a petition seeking the establishment of a boundary commission. In 1970, the boundary commission rendered its decision, establishing Campbells Run Road as the northern boundary of Collier. Litigation concerning the boundary dispute finally concluded in 1976. *In re Establishment of Boundary Between Collier Township and Robinson Township*, 25 Pa. Cmwlth. 230, 360 A.2d 841 (1976); *Collier Township v. Robinson Township*, 25 Pa. Cmwlth. 227, 360 A.2d 839 (1976); *Robinson Township v. Collier Township*, 9 Pa.Cmwlth. 193, 303 A.2d 575 (1973).

4. Cloverleaf is a retirement community that made limited use of the public schools. (Trial ct. op. at 1 n. 1.)

5. Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. §§ 6901–6924.

On February 16, 2007, Robinson and Montour filed separate motions for judgment on the pleadings, alleging that there are no disputed issues of fact, (R.R. at 162a–63a, 174a), and that they are entitled to recoup the taxes paid pursuant to sections 307 and 1709 of The First Class Township Code (Code)[6] and section 2 of the LTEA.[7] On the same date, Collier and Chartiers Valley filed a joint motion for judgment on the pleadings. Relying in part on section 706 of The Second Class County Code and section 226 of the Public School Code of 1949,[8] they argued, *inter alia,* that the redesignation of the parcels has no retroactive effect. (R.R. at 113a–22a.)

By opinion and order dated July 3, 2007, the trial court decided the matter in favor of Collier and Chartiers Valley. With respect to Robinson's request for recoupment of cable franchise fees, the trial court stated only that Robinson admittedly is not a party to the cable franchise agreement between Collier and Comcast. As to the taxes, the trial court cited *Downingtown Area School District v. Chester County Board of Assessment Appeals,* 590 Pa. 459, 913 A.2d 194 (2006), and stated that under the Uniformity Clause of the Pennsylvania Constitution, each property owner shall pay his or her proportionate share of the costs of government services which shall be measured by the relative value of his or her property to that of his or her neighbor.[9] The trial court concluded that Cloverleaf property owners paid only their proportionate share of the government services that Collier and Chartiers Valley provided and/or made available, and, therefore, there was no "windfall" to be disgorged. The trial court further concluded that section 307 of the Code, entitled "Adjustment of Indebtedness," is not intended to direct a court to transfer taxes to a governmental body that has not incurred any indebtedness. In addition, the trial court indicated that, to the extent that section 307 of the Code provides discretion to the trial court (the trial court "may adjust the taxes …"), the trial court concluded that the interests of justice would not be served by making any adjustments in this case. Finally, the trial court held that section 13 of the Act of June 21, 1939, P.L. 626, *as amended,* 72 P.S. § 5452.13 (concerning assessments by counties of the second class)[10] is not applicable because the Cloverleaf properties were not omitted from the County assessment rolls. Instead, they were included on those assessment rolls and the property owners paid real estate taxes to Collier, Chartiers Val-

**6.** Act of June 24, 1931, P.L. 1206, *as amended,* 53 P.S. §§ 55307, 56709.

**7.** 53 P.S. § 6902.

**8.** Act of March 10, 1949, P.L. 30, 24 P.S. § 2–226. Section 226 provides that if the boundary lines of a school district are changed by reason of a change of the boundary lines of a township, the change takes effect at the beginning of the first school year after the change in boundary lines is permanently effected. Here, that date is July 1, 2006.

**9.** In *Downingtown,* the Supreme Court began its analysis with the following observation:
> As early as 1930, this Court recognized that a taxpayer is entitled to relief under the Uniformity Clause where his property is assessed at a higher percentage of fair market value than other properties throughout the taxing district. This precept is based upon the general principle that taxpayers should pay no more or less than their proportionate share of government.

*Id.* at 466, 913 A.2d at 199 (citations omitted).

**10.** In pertinent part, this provision states that any property that may have been omitted from the assessment rolls at the last triennial assessment shall be assessed and made subject to taxation for the period, not exceeding five years, during which said property was omitted. 72 P.S. § 5452.13.

ley and the County. For these reasons, the trial court granted judgment on the pleadings to Collier and Chartiers Valley and dismissed Montour/Robinson's complaint with prejudice.

 Both Robinson and Montour filed appeals to this court, which were consolidated.[11] The issue presented is whether the law authorizes, or equitable principles require, recovery, in whole or in part, of real estate taxes, other taxes and cable franchise fees that were paid to Collier and Chartiers Valley on properties later determined to be located in Robinson and Montour.

 Robinson asserts that the trial court erred in determining that Collier had not received a windfall by its unauthorized collection of taxes because Cloverleaf residents paid more in taxes than the cost of government services they received. Robinson argues that the trial court erred in relying on *Downingtown* to conclude that the cost of government services equals the amount of taxes paid by a property owner. However, Robinson mischaracterizes the trial court's reasoning. The trial court did not address the actual value or costs of services provided to individual taxpayers; instead, the trial court correctly noted that taxpayers are assessed a proportionate share of the cost of government services as measured by the properties' value, not the value or cost of services actually used. Under Robinson's theory, every taxpayer who did not utilize police, fire or school services in a given year would be entitled to a tax refund.

 Next, Robinson correctly states that section 1709 of the Code authorizes Robinson to levy and collect taxes upon all real property and occupations within Robinson [12] and that section 2 of the LTEA authorizes Robinson to levy and collect realty transfer taxes, earned income taxes, net profit and occupational and privilege taxes upon persons and transactions within Robinson.[13] Montour adds that section 676 of the Public School Code of 1949, 24 P.S. § 6–676, and section 2 of the LTEA authorize the school district to levy and assess taxes on all properties, persons, occupations, etc., within the boundaries of Robinson. Montour/Robinson assert that, because they, and not Collier or Chartiers Valley, have the statutory right to collect taxes from the redesignated parcels, they also have the right to recoup taxes on

---

11. In reviewing a trial court's decision to grant judgment on the pleadings, the appellate court's scope of review is plenary. *North Sewickley Township v. LaValle*, 786 A.2d 325 (Pa.Cmwlth.2001), *appeal denied*, 568 Pa. 729, 797 A.2d 918 (2002). We must confine our consideration to the pleadings filed and any documents properly attached to them, accepting as true all well pled statements of fact and admissions. *Id.* We will sustain a trial court's grant of judgment on the pleadings only where the moving party's case is so clear and free from doubt that a trial would prove fruitless. *Id.*

12. Section 1709 of the Code states in part as follows:

> The board of township commissioners may levy taxes upon all property and upon all occupations within the township made taxable for township purposes, as ascertained by the valuation for county purposes made by the assessors of the several counties of this Commonwealth for the year for which the township taxes are levied. . . .

53 P.S. § 56709.

13. In relevant part, section 2 of the LTEA states:

> The duly constituted authorities of . . . townships of the first class . . . may, in their discretion, by ordinance or resolution, for general revenue purposes, levy, assess and collect . . . such taxes as they shall determine on persons, transactions, occupations, privileges, subjects and personal property within the limits of such political subdivisions . . . levying and assessing the tax. . . .

53 PS. § 6902.

these parcels that were unlawfully collected by Collier and Chartiers Valley.

Robinson and Montour agree that this case does not present a boundary dispute. Indeed, their argument relies on the fact that the Cloverleaf parcels always have been situated within the boundaries of Robinson. Nevertheless, they assert that the trial court's March 23, 2005, order and the December 28, 2005, letter from the County "effectively" altered, ascertained or established the border between Collier and Robinson. Based on this assertion, Robinson and Montour contend that section 307 of the Code provides authority for the court to fashion an appropriate remedy in this case. We disagree.

Section 307 of the Code provides as follows:

> Whenever the *boundaries* of any township have been altered or ascertained and established, the court of quarter sessions *may* adjust the taxes, debts, and expenses for township, municipal and school purposes between the townships, municipalities and school districts affected.

53 P.S. § 55307 (emphasis added).

Here, the only thing altered, ascertained or established was the designation of the location of these parcels on the County's records. Because the location of the parcels was simply misidentified by the County, no "boundaries" were affected by the trial court's order or the County's letter, and, therefore, section 307 of the Code does not apply.[14] Moreover, even if section 307 applied under these circumstances, the permissive statutory language does not compel a different result.

■ Accordingly, we are left to determine whether equity requires that Collier and Chartiers Valley, which assumed responsibility to provide government services for these parcels and residents, pay the taxes collected to Robinson and Montour, a township and school district that did not assume any responsibility for these properties or residents during the relevant period. Under the circumstances presented, we agree with the trial court that maintenance of the *status quo* until the effective dates of the redesignation is the equitable result.

■ Finally, Robinson complains that Collier was not authorized to collect cable franchise fees from Comcast that were based upon equipment and services provided to subscribers in the Cloverleaf parcels. We note that Collier collected these fees, and Robinson did not exercise its right to collect these fees, because *both* townships believed that the parcels were located in Collier. Robinson is not a party or third-party beneficiary to the contract with Comcast; there is no assertion that Collier intentionally or knowingly took any action that interfered with Robinson's rights; and Robinson asserts no other basis for its claim to these fees.[15]

Accordingly, we affirm.

---

**14.** In addition, Article III of the Code, entitled "Township Lines and Boundaries," provides that the court may alter, ascertain or establish the boundary lines of a township upon the presentation of a petition, the appointment of a boundary commission, the filing of the boundary commission's report and the confirmation of the same by the court. Sections 302–304 of the Code, 53 P.S. §§ 55302–55304. Because this procedure was not followed, section 307 of the Code does not apply, and the parties cite no authority for the assertion that a boundary can be altered, ascertained or established by any other method.

**15.** Robinson requests this court to determine the statutes of limitations applicable to its claims and argues, in part, that the five-year period in 72 P.S. § 5452.13 applies. Although our disposition of this matter renders that issue moot, we note that the statutory provision relates to properties that were omit-

## ORDER

AND NOW, this 10th day of March, 2008, the order of the Court of Common Pleas of Allegheny County, dated July 3, 2007, is hereby affirmed.

ted from county tax records or to new properties added to the same. Here, the Cloverleaf properties were not omitted or added to County tax records. Instead, the County corrected its existing records of these parcels by changing their designated location.